## MISSOURI–KANSAS–TEXAS RY. CO v. WIMBERLY.

No. 921.

Court of Civil Appeals of Texas. Waco.
May 29, 1930.

C. C. Huff, of Dallas, and Groce & Groce, of Waxahachie, for appellant.

J. T. Spencer, of Waxahachie, for appellee.

BARCUS, J.

Appellee instituted this suit against appellant to recover damages for the killing of one mule and the injuring of another. The cause was tried to a jury, submitted on special issues, and resulted in a judgment being entered for appellee. The jury found that the place where the mules were struck was not within the switch limits of appellant. It was admitted the railroad was not fenced at said place. Appellant's sole contention before this court is, that said finding of the jury is not only contrary to but wholly without support in the evidence. In its brief it states that if said finding is supported, the judgment of the trial court should be affirmed.

The statement of facts is brief. A plat of the railroad was introduced, which showed that the regular switching limits at Italy extended south from the depot to a point near where the interurban railway crossed the railway track, and extended north a considerable distance. At a point about 100 feet south of the interurban railway track, there begins what is designated as a passing track of appellant, which is 2,709 feet in length. The mules were struck about 450 feet from the north end of said passing track. The issue therefore for determination is whether the passing track is within the switch limits. Appellee Wimberly testified that the mules were struck about one-half a mile south from the depot; that he did not think the passing track was used for switching cars but was used only as a passing track; that there was no sign stating the passing track was in the switch limits. John Reeves, the section foreman of appellant, testified that the mules were struck about 400 feet down on the passing track; that there was a house track north of the interurban crossing; that the track on the south of the interurban was called the passing track and was used for trains in passing. He testified: "We did not use it much for switching purposes. We used it more for passing trains." He further testified: "Between the interurban crossing and the depot to the north there is what we call a house track. That is where cars are parked for people to use working for the railroad. The house track is an extra track used at the depot for unloading and for switching purposes." R. O. Carter, the claim agent of appellant, testified that the regular switch limits of the railway company did not go farther south than the interurban crossing; that the reason it did not was that appellant did not want any more railroad crossings than they could help; that the interurban was built after the southern limits of the regular switch track were located, and that was the reason for not extending it (the switch track) to the passing track. He testified that he had seen the passing track used for switching trains when they could not get on the switch; that sometimes a train would leave some of the cars on the passing track and go and do its work and then come back and pick them up. He testified that appellant had the passing tracks every few miles on its road; that they were used for the passing of trains and storage of freight cars.

■■ We think the above testimony is sufficient to support the finding of the jury that the passing track where the mules were struck was not within the switch limits of appellant. It appears that the passing tracks of appellant are located every few miles on the whole length of their line of railway. Whether any of the passing tracks are embraced within the switch limits of any railway station is primarily a fact question for the jury's determination. We think the evidence in the instant case is sufficient to support the jury's finding that the passing track in question was not within the switching limits of the depot at Italy.

The judgment of the trial court is affirmed.